# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **JOHNNY MURRAY** <br> La. DOC #494592 <br> VS. <br><br> **WARDEN JONES, ET AL.** | **CIVIL ACTION NO. 08-1733** <br><br> **SECTION P** <br> **JUDGE JAMES** <br> **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Johnny Murray, proceeding *in forma pauperis*, filed the instant civil rights suit pursuant to 42 U.S.C. §1983 on November 14, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Caldwell Correctional Center (CCC), Greyson, Louisiana. However, when he filed this complaint he was incarcerated at the East Carroll Detention Center (ECDC), Lake Providence, Louisiana. He complained that he was denied adequate medical care when he was incarcerated at ECDC and earlier when he was incarcerated at the River Bend Detention Center (RBDC) which is also located in Lake Providence. In his original complaint he sued RBDC Warden Jones and Nurse Posey, and ECDC Warden Gunter and Nurse Coleman. In his amended complaint filed on January 29, 2009, he added "Dr. John Doe," a Lake Providence physician, and "Ms. Jane Doe" the mail room clerk at ECDC. In his original complaint he prayed for compensatory damages of $2 million and an injunction ordering the defendants to provide appropriate medical care during the rest of his incarceration. In subsequent pleadings plaintiff requested appointment of counsel. [rec. docs. 5, 6 and 7]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the

following reasons, it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted.

## *Statement of the Case*

Plaintiff's original complaint was filed on November 14, 2008. [rec. doc. 1] The undersigned completed an initial review on January 22, 2009, and directed plaintiff to amend to provide more specific information.[1] In due course plaintiff amended his complaint. [rec. doc. 5] In these pleadings plaintiff made the following claims:

On some unspecified date plaintiff was incarcerated at the Franklin Parish Jail where Naproxen[2] was prescribed for chronic arthritis[3] in his back; plaintiff also received permission to sleep on an extra mattress. On April 10, 2008, he was transferred to RBDC where, according to plaintiff, Nurse Posey refused to provide Naproxen because that medication is not permitted at RBDC and because RBDC would not pay for the medication.

Plaintiff made "numerous" requests for medical attention and was, on two occasions, sent to the E.A. Conway Hospital for examination and treatment. On both occasions he received injections for his back pain, but he claimed that he was not allowed the proper medication –

---

[1] In the Memorandum Order of January 22, 2009, the undersigned made the following observations and issued the following order: "Plaintiff has provided a general complaint concerning his claim that he was denied appropriate medical care. He should amend his complaint to provide a more detailed description of the circumstances complained of; he should specify how each defendant violated his rights; and, he should describe in detail the harm or injury he sustained as a result." [rec. doc. 4]

[2] Naproxen is in a class of medications called NSAIDs (non-steroidal anti-inflammatory medication.) It works by stopping the body's production of a substance that causes pain, fever, and inflammation. Medline Plus, A Service of the United States National Library of Medicine and the National Institutes for Health, Drugs and Supplements, at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html

[3] Arthritis is inflammation of one or more joints, which results in pain, swelling, stiffness, and limited movement. There are over 100 different types of arthritis. Id., Encyclopedia, at http://www.nlm.nih.gov/medlineplus/ency/article/001243.htm

2

Lortab[4] – because he was incarcerated at RBDC.[5]

On August 21, 2008, plaintiff was examined by a private practitioner, "Dr. John Doe" of Lake Providence. This physician performed a psychological evaluation and concluded that plaintiff's pain was psychosomatic. According to plaintiff, this physician was without authority or license to perform such an evaluation and his diagnosis is contradicted by an MRI and the diagnosis of "specialists."[6] In any event, plaintiff faults Warden Jones and Nurse Posey for failing to provide appropriate medical care while he was incarcerated at RBDC.

Following his psychological examination on August 21, 2008, plaintiff was transferred to ECDC. According to plaintiff, since his arrival at ECDC Nurse Coleman and Warden Gunter have continued to provide inadequate medical care.

On January 23, 2009, "Ms. Jane Doe" of the ECDC mail room, "... opened legal mail clearly marked as coming from this court and addressed to petitioner..."

According to plaintiff, the actions of the defendants, Warden Jones and Nurse Posey at RBDC, Warden Gunter and Nurse Coleman at ECDC, and "Dr. John Doe," have "caused

---

[4] Lortab® is a mixture of hyrdocodone and acetaminophen. Hydrocodone is available only in combination with other ingredients, and different combination products are prescribed for different uses. Some hydrocodone products are used to relieve moderate to severe pain. Hydrocodone is in a class of medications called opiate (narcotic) analgesics. Hydrocodone relieves pain by changing the way the brain and nervous system respond to pain. Id., Drugs and Supplements, at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html

[5] In his amended complaint, plaintiff makes reference to Administrative Remedies Procedure (ARP) grievances which he claims are "attached hereto and made a part hereof." [rec. doc. 5, p. 2] However, no such documents are attached or otherwise provided in the amended complaint. Plaintiff did provide what purport to be the first step ARP filed on September 9, 2008 [rec. doc. 1, pp. 6-10] and the second step ARP filed on October 10, 2008 [rec. doc. 1, pp. 11-15] with his original complaint. Neither of the grievances make reference to an MRI or a formal diagnosis. Of course, plaintiff claims that he did not receive a response to either grievance. [rec. doc. 1, ¶II]

[6] Again, in the amended complaint, plaintiff referenced ARPs "attached" to the pleading; however, as noted above, no such documents are attached. Nor do the ARPs attached to the original complaint support plaintiff's claim that any previous diagnostic tests contradicted "Dr. John Doe's" conclusions. [rec. doc. 1, pp. 6-15]

continual severe back pain that make it impossible for petitioner to stand and/or sit for normal periods of time." He also complained that the actions of "Ms. Jane Doe" have caused him to "fear that [his] clearly marked legal mail, privileged and confidential is being censored, copied and retained by defendants...thus breeching the confidentiality of [plaintiff's] claims and causing [him] to fear [his] life and health [are] placed in further jeopardy..."

In his amended complaint and subsequent letters to the court, plaintiff complained that the ECDC law library is insufficient and he requested appointment of counsel. On February 13, 2009, plaintiff was transferred to Caldwell Corrections Center.

*Law and Analysis*

*1. Appointment of Counsel*

In his amended complaint, plaintiff requested appointment of counsel because the ECDC law library was alleged to be inadequate. [rec. doc. 5] Following his transfer to Caldwell Corrections Center, plaintiff again requested appointment of counsel. [rec. docs. 6 and 7]

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions, [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1)

4

to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242.

Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint and an amended complaint setting forth his cause of action against the named defendants. No special legal knowledge is required of plaintiff herein; he was earlier instructed on the applicable law and directed to provide the **FACTUAL** basis for his complaint. Indeed, plaintiff, and no one else, has first hand knowledge of the **FACTS** which form the basis of this action. The claim is not necessarily atypical of those

5

often asserted in prisoner civil rights litigation and is not complex.

Further, as will be shown, dismissal of this matter is now recommended; therefore, counsel would not assist in shortening the proceedings. Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his own behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

## 2. Screening

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).; *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the

context of dismissals under §1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint and his amended complaint outline the broad contours of his claims for relief. He has pleaded his best case and need not be afforded further opportunities to amend. Accepting all of plaintiff's allegations as true, it is clear that plaintiff has failed to state a claim for which relief may be granted.

### 3. State Actor

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, the plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law.

The complaint is devoid of any allegation which indicates that "Dr. John Doe" was acting under the color of state law. To the contrary, plaintiff's pleadings suggest that the unidentified physician is, as plaintiff described him, a private practitioner in Lake Providence. Compare *West v. Atkins*, 487 U.S. 42, 49-52, 108 S.Ct. 2250, 101 L.Ed.2d 40 (private physician acts under color of state law for § 1983 purposes when treating patient in state prison under contract with state).

Absent some allegation to establish this physician as a "state actor," plaintiff's complaint against him fails to state a claim and must be dismissed as frivolous.

*4. Deliberate Indifference*

Medical care claims, when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis

8

supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Finally, disagreement with diagnosis and treatment cannot support a claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Thus, assuming for the sake of argument that "Dr. John Doe" is in fact a "state actor," in order to prevail against him, and the remaining defendants, Wardens Jones and Gunter, and, Nurses Posey and Coleman, plaintiff must establish that these defendants were deliberately indifferent to plaintiff's serious medical needs. Plaintiff was incarcerated at RBDC from April - August, 2008. During that four month period, he was twice examined and treated for back pain at the E. A. Conway Hospital and, on his final day of incarceration, he was examined by the private physician identified by plaintiff as "Dr. John Doe." Plaintiff's chief complaint is that the RBDC staff refused to provide Naproxen and Lortab; however, he does not allege that he was denied any and all forms of medication or treatment. Clearly, plaintiff has not shown deliberate indifference on the part of the RBDC defendants.

Thereafter, plaintiff was transferred to ECDC where he remained from August 2008 to

9

February 2009. The ECDC defendants were in receipt of "Dr. John Doe's" psychological profile and diagnosis which, according to plaintiff, indicated that his complaints were psychosomatic. Clearly, the ECDC defendants were entitled to rely on that diagnosis and plaintiff's disagreement with the subsequent diagnosis and treatment is insufficient to support a claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

In short, plaintiff's medical care complaint fails to state a claim for which relief may be granted.

*5. Interference with Legal Mail*

Finally, plaintiff complains that an unidentified mail clerk at ECDC interfered with his legal mail; however, as a factual matter, he has only claimed that the this defendant opened and inspected correspondence which originated from this Court. Plaintiff claimed that this incident occurred on January 23, 2009 [rec. doc. 5, p. 3] and therefore it is safe to assume that the document in question was the January 22, 2009 Memorandum Order directing plaintiff to amend his complaint. [rec. doc. 4] Clearly, this item was not privileged correspondence from plaintiff's attorney. Plaintiff has not established that the defendant did anything more than open and inspect the envelope containing the Memorandum Order, an activity which she is permitted by law to perform. See *Brewer v. Wilkinson*, 3 F.3d 816, 820-821 (5th Cir. 1993).

Further, to the extent that plaintiff maintains that the defendants' acts interfered with his right of access to the courts, he has also failed to state a claim. An inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' allegedly unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d

606 (1996). To prevail on such a claim, a prisoner must show that his legal position has been prejudiced. See *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). He must allege and ultimately demonstrate that he was prevented from raising a meritorious legal issue. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998). Plaintiff has not alleged that the mail room clerk read the order or did anything which inhibited plaintiff from litigating this action. Indeed, the document in question directed plaintiff to amend his complaint and he complied with the order within a week of the day it was mailed by the Clerk of Court. Plaintiff has not shown that his legal position has been prejudiced by the defendant's alleged interference with his legal mail, and therefore his claim is frivolous.

## *5. Conclusion and Recommendation*

Plaintiff's allegations, read in the light most favorable to him, do not establish the deliberate indifference standard required under law. His medical care allegations are subject to dismissal for failure to state a claim; plaintiff's complaints concerning his "legal mail" are frivolous. Further, he is not entitled to appointed counsel. Accordingly,

Plaintiff's request for Appointment of Counsel [rec. doc. 6, p. 3] is **DENIED;** and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, March 9, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE